RANDOLPH, Justice,
for the Court:
¶ 1. Robert Rowland appeals a judgment of the Washington County Circuit Court denying his motion for post-conviction collateral relief. Rowland claims that he was placed in double jeopardy when he was convicted on two counts of armed robbery and two counts of capital murder for killing while engaged in the commission of those same two armed robberies. We agree. Accordingly, we vacate Rowland’s separate armed-robbery convictions and sentences and reverse the judgment of the circuit court denying Rowland’s petition for post-conviction relief.
FACTS AND PROCEDURAL HISTORY
¶ 2. Three masked men armed with shotguns — later identified as Rowland, Donald Keeton, and Keith Ouzts — entered the Le-flore County Country Club, where eight men — Pat Bolton, James Campbell, Paul Hughes, O.B. Singleton, and four others— were gathered playing poker. Rowland, Keeton, and Ouzts robbed thé eight poker players. During the armed robbery, two of the poker players — James Campbell and Paul Hughes — were shot and killed.
¶ 3. A Leflore County grand jury indicted Rowland, Keeton, and Ouzts on four counts each: (1) capital murder of James Campbell while “in the commission of the crime of armed robbery ... of Pat Bolton and others,”[1] (2) capital murder of Paul Hughes while “in the commission of the crime of armed robbery ... of O.B. Singleton and others[,]”[2] (3) armed robbery of
*1034 Pat Bolton,[3] and (4) armed robbery of O.B. Singleton.[4] Rowland, Keeton, and Ouzts each pleaded guilty to all four counts, and each was sentenced to life imprisonment for each of the two capital murder charges and twenty-four years for each of the two robbery charges, with the sentences to run consecutively.
¶ 4. Rowland filed a post-conviction-relief petition in the Washington County Circuit Court, claiming that the trial court placed him in double jeopardy by convicting him of capital murder and the underlying felony of armed robbery. Finding that Rowland’s petition was time-barred under the three-year statute of limitations of the Uniform Post-Conviction Collateral Relief Act (“UPCCRA”), the circuit court dismissed the petition with prejudice. On appeal, the Court of Appeals affirmed the circuit court’s dismissal of the petition. Rowland v. State, 42 So.3d 545, 553 (Miss.Ct.App.2009). We granted certiorari.
¶ 5. We held that Rowland’s double-jeopardy claim was not subject to the procedural bars of the UPCCRA. Rowland v. State, 42 So.3d 503 (Miss.2010). The UP-CCRA provides courts with a limited procedure “to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal”; under it, any person sentenced by a Mississippi court may file a motion to vacate, set aside, or correct his judgment or sentence, or for an out-of-time appeal, for certain claims designated by the Act.[5] Miss.Code Ann. §§ 99-39- *1035 3(2), 99-39-5 (Rev.2007). The UPCCRA contains procedural requirements with which petitioners must comply or risk having their claims barred, but also specifies certain statutory exceptions, as follows:
1. Three-year statute of limitations.
The limitations period begins to run: when this Court rules on direct appeal; when the time for filing an appeal expires, if no appeal is filed; or when the judgment of conviction is entered, if the defendant pleads guilty.[6] Miss.Code Ann. § 99-39-5(2) (Rev.2007).
2. Waiver. The Act provides that:
[f] allure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
Miss.Code Ann. § 99-39-21(1) (emphasis added).
3.Successive Writs. A petitioner may not file successive writs once a court enters an order denying him relief under the Act.[7] Miss.Code Ann. § 99-39-23(6).
*1036 f 6. In addition to the statutory-exceptions afforded by the Act, we have provided that an exception to the procedural bars exists for errors affecting certain constitutional rights. See Smith v. State, 477 So.2d 191, 195 (Miss.1985) (citations omitted) (“errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal”). On certiorari review from the Court of Appeals, we found specifically that errors that “implicate [the] fundamental constitutional right to be free from double jeopardy ... are excepted from the procedural bars of the UPCCRA.”[8] Rowland, 42 So.3d at 508. Thus, on prior review, we recognized that the State has neither the authority nor the right to subject a person to double jeopardy. We also have recognized exceptions to procedural bars for claims asserting illegal sentence and denial of due process at sentencing. See Ivy v. State, 731 So.2d 601, 603 (Miss. 1999) (finding claim of illegal sentence not time-barred); Kennedy v. State, 732 So.2d 184, 186-87 (Miss.1999) (finding claim of illegal sentence not time-barred or barred by res judicata); Luckett v. State, 582 So.2d 428, 430 (Miss.1991) (excepting claim that “disclose[d] a denial of due process in sentencing” from time limitations); Grubb v. State, 584 So.2d 786, 789 (Miss.1991) (“consider[ing] plain error [illegal sentence] notwithstanding procedural bars which might otherwise prohibit its consideration”); Smith, 477 So.2d at 195 (finding a deprivation of due process in sentencing “too significant a deprivation of liberty to be subjected to a procedural bar”). Like a double-jeopardy claim, a claim of illegal sentence or denial of due process in sentencing also must be considered regardless of when it is raised, because the State is without authority or right to impose a sentence illegally or without due process. The deprivation of liberty — that unalienable, natural right inherent in all persons since time immemorial[9] — without authority of law distinguishes these three excepted errors from all other post-conviction claims. Accordingly, we concluded that Rowland’s petition was excepted from the UPCCRA’s three-year statute of limitations, reversed the decisions of the trial and appellate courts, and remanded Rowland’s petition to the trial court for an evidentiary hearing on his double-jeopardy claim. Rowland, 42 So.3d at 508.
¶ 7. On remand, the trial court again denied Rowland’s petition for post-conviction relief. The trial court found that, despite the capital-murder indictments including the armed robberies of Pat Bolton and O.B. Singleton, the indictment also included the term “and others”:
*1037 the State has included elements in the capital murder indictments, not included in the armed robbery indictments. Furthermore, if the case [had] been tried, the jury could have found that Pat Bolton and O.B. Singleton were not victims of armed robbery, and still found Mr. Rowland guilty of the two capital murders based on the armed robbery of the other victims.
Rowland is before this Court on appeal of the trial court’s judgment.
ISSUE
¶ 8. This case involves one issue: whether the trial court erred in denying Rowland’s motion for post-conviction collateral relief, because the armed-robbery convictions violated his right against double jeopardy.[10]
DISCUSSION
¶ 9. “We apply a de novo review to claims of double jeopardy and to questions of law.” Foreman v. State, 51 So.3d 957, 960 (Miss.2011).
¶ 10. “Double jeopardy consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (8) ;protection against multiple punishments for the same offense.” Powell v. State, 806 So.2d 1069, 1074 (Miss.2001) (emphasis added). At issue today is the third protection — whether Rowland’s right to be free from multiple punishments for the same offense was violated when he was convicted of two counts of capital murder for killing in the course of an armed robbery and separate counts for the same armed robberies. In determining whether double-jeopardy protection applies, we apply the test enunciated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180,182, 76 L.Ed. 306 (1932). Id. at 1074. The Blockburger Court provided that:
[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not .... “A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.”
Blockburger, 284 U.S. at 304, 52 S.Ct. 180 (citations omitted) (emphasis added). We have provided that “Blockburger is met when each crime ‘requires proof of an element not necessary to the other.’ ” Nel *1038 son v. State, 10 So.3d 898, 907-08 (Miss. 2009) (citation omitted).
¶ 11. In considering whether a single act constitutes more than one offense, we consider the charges as indicted, not the underlying facts.[11] Culp v. State, 933 So.2d 264, 281 (Miss.2005) (“the proper inquiry concerns the elements of the crime, rather than the underlying facts”). The elements of the indicted capital-murder offenses were:
1. the killing of Paul Hughes [James Campbell]
2. while engaged in the commission of armed robbery of O.B. Singleton [Pat Bolton] and others.
Thus, the elements of the felonies underlying the capital-murder indictments— “armed robbery of O.B. Singleton [Pat Bolton] and others” — were:
1. taking the personal property of O.B. Singleton [Pat Bolton] and others
2. from the presence of O.B. Singleton [Pat Bolton] and others
3. by putting O.B. Singleton [Pat Bolton] and others in fear of immediate injury by the exhibition of a deadly weapon.
See Miss.Code Ann. § 97-3-79. The elements of the indicted armed-robbery offenses were:
1. taking the personal property of O.B. Singleton [Pat Bolton]
2. from the presence of O.B. Singleton [Pat Bolton]
3. by putting O.B. Singleton [Pat Bolton] in fear of immediate injury by the exhibition of a deadly weapon.
Clearly, the capital-murder convictions required proof of additional elements that the armed-robbery convictions did not: the killings of Paul Hughes and James Campbell. This leaves us with the question of whether Rowland’s armed-robbery convictions required proof of an additional element that the capital-murder convictions did not. If Rowland’s capital-murder convictions could have been based on the language of the capital-murder indictments referencing armed robberies of “others”— not based on the armed robberies of O.B. Singleton and Pat Bolton — then each count of armed robbery required proof of an element that the indicted counts of capital-murder did not: the separate armed robberies of O.B. Singleton and Pat Bolton.
¶ 12. Whether Rowland could have been convicted on an indictment charging capital murder based on the “armed robbery of ... others” depends on whether the identity of the victim of an underlying armed robbery is an element of capital murder that must be stated in the capital-murder count and whether a capital-murder indictment based on armed robbery of “others” could have given Rowland fair and adequate notice of the crimes of which he was charged and sufficient facts to enable him to plead double jeopardy. See Hodgin v. State, 964 So.2d 492, 497 (Miss.2007) (“[a]n indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution[12] for the *1039 same offense.”). We specifically have provided that “an indictment must state the name of the victim of an offense where that is an element of the offense, and a failure to state it, or a material variance between statement and proof is fatal, but an immaterial variance is not.” Burks v. State, 770 So.2d 960, 963 (Miss.2000) (citation omitted) (emphasis added). A capital-murder indictment that fails to identify the victim of the underlying crime does not contain sufficient facts to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy in the event that he is separately punished or later prosecuted for the underlying felony; in other words, the identity of the victim of the underlying felony is an element of the offense of capital murder that must be stated in the capital-murder indictment. Accordingly, Rowland could not have been convicted on an indictment of capital-murder based on the “armed robbery of ... others”; his capital-murder convictions had to have been based on the armed robberies of the individuals named in the indictments: O.B. Singleton and Pat Bolton.
¶ 13. We emphasize that it is the charges as indicted — not the underlying facts — that we consider when addressing a double-jeopardy claim. Culp, 933 So.2d at 281. The State had discretion to indict Rowland for the armed robberies of each person present at the poker game, but instead chose to indict him for the armed robberies of Pat Bolton and O.B. Singleton. We conclude that Rowland was convicted of the indicted charges of capital-murder for killing during the commission of the armed robberies of O.B. Singleton and Pat Bolton, and then separately for the armed robberies of O.B. Singleton and Pat Bolton, placing him in double jeopardy. The remedy for such a double-jeopardy violation is to vacate the armed-robbery convictions and sentences.[13]
CONCLUSION
¶ 14. Finding that Rowland was placed in double jeopardy when he was convicted of capital murder (killing while engaged in the commission of armed robbery) and the included offense of armed robbery, we reverse the judgment of the Washington County Circuit Court denying Rowland’s petition for post-conviction collateral relief and vacate his two armed-robbery convictions and sentences.
¶ 15. REVERSED AND RENDERED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ„ CONCUR. KING, J., NOT PARTICIPATING.

. Indictment 19,266:
That Donald L. Keeton, Robert Stanley Rowland and Keith Ouzts late of the County aforesaid, on the 16th day of February 1979, in the County and State aforesaid, and within the jurisdiction of this Court, unlawfully, willfully, feloniously, did, then and there, kill and murder one James Campbell a human being, said killing being done with or without any design to effect death, while said Donald L. Keeton, Robert Stanley Rowland and Keith Ouzts were engaged in the commission of the crime of armed robbery (Section 97-3-79) of Pat Bolton and others at the Leflore County Country Club, in violation of Section 97-3-19(2)(e).

. Indictment 19,265:
That Donald L. Keeton, Robert Stanley Rowland and Keith Ouzts late of the County aforesaid, on the 16th day of February 1979, in the County and State aforesaid, and within the jurisdiction of this Court, unlawfully, willfully, feloniously, did, then and there, kill and murder one Paul Hughes a human being, said killing being done with or without any design to effect death, while said Donald L. Keeton, Robert Stanley Rowland and Keith Ouzts were engaged in *1034 the commission of the crime of armed robbery (Section 97-3-79) of O.B. Singleton and others at the Leflore County Country Club, in violation of Section 97-3-19(2)(e).

. Indictment 19,267:
That Donald L. Keeton, Robert Stanley Rowland and Keith Ouzts late of the County aforesaid, on the 16th day of February 1979, in the County and State aforesaid, in and upon Pat Bolton, a human being, unlawfully, willfully and feloniously did make and assault and they, the said Keeton, Rowland and Ouzts did then and there by the exhibition of a deadly weapon, to wit: a shotgun, being a firearm, unlawfully, willfully and feloniously put Pat Bolton in bodily fear of immediate injury to his person, and more than $100.00 of the personal property of O.B. Singleton, G.W. Putman, Billy Floyd, Joe Floyd, Pat Bolton, Steve McHann, James Campbell and Paul Hughes of the total and aggregate value of more than $100.00, in money, from the presence or from the person and against the will of the said Pat Bolton did then and there unlawfully, willfully, feloniously and violently take, steal and carry away.

. Indictment 19,268:
That Donald L. Keeton, Robert Stanley Rowland and Keith Ouzts late of the County aforesaid, on the 16th day of February 1979, in the County and State aforesaid, in and upon O.B. Singleton, a human being, unlawfully, willfully and feloniously did make and assault and they, the said Keeton, Rowland and Ouzts did then and there by the exhibition of a deadly weapon, to wit: a shotgun, being a firearm, unlawfully, willfully and feloniously put O.B. Singleton in bodily fear of immediate injury to his person, and more than $100.00 of the personal property of O.B. Singleton, G.W. Putman, Billy Floyd, Joe Floyd, Pat Bolton, Steve McHann, James Campbell and Paul Hughes of the total and aggregate value of more than $100.00, in money, from the presence or from the person and against the will of the said Pat Bolton did then and there unlawfully, willfully, feloniously and violently take, steal and carry away.

.The statutorily-designated claims for post-conviction relief are as follows: (a) "the conviction or the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of Mississippi;” (b) "the trial court was without jurisdiction to impose sentence;” (c) "the statute under *1035 which the conviction and/or sentence was obtained is unconstitutional;” (d) "the sentence exceeds the maximum authorized by law;” (e) "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;” (f) "there exists biological evidence secured in relation to the investigation or prosecution attendant to the petitioner’s conviction not tested, or, if previously tested, that can be subjected to additional DNA testing, that would provide a reasonable likelihood of more probative results, and that testing would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution”; (g) "his plea was made involuntarily;” (h) "his sentence has expired; his probation, parole or conditional release unlawfully revoked; or he is otherwise unlawfully held in custody;” (i) “he is entitled to an out-of-time appeal;” and (j) "the conviction or sentence is otherwise subject to collateral attack upon any grounds of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy.” Miss.Code Ann. § 99-39-5 (Rev.2007).

. A statutory exception to the statute of limitations exists where a petitioner shows that: an intervening decision of the United States or Mississippi Supreme Court would have "actually adversely affected the outcome of his conviction or sentence”; evidence that was not reasonably discoverable at the time of trial "practically conclusively]” would have caused a different result; or biological evidence exists that, if tested or retested, “would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution.” Miss.Code Ann. § 99-39-5(2)(a). The statute also provides an exception when a petitioner "claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked,” and provides that the limitations period in capital cases is one year. Miss.Code Ann. § 99 — 39—5(2)(b).

. A statutory exception to the successive-writs bar exists where a petitioner: raises "supervening mental illness before the execution of a sentence of death”; shows that an intervening decision of this Court or the United States Supreme Court "would have actually adversely affected the outcome of his conviction or sentence”; presents evidence that was not reasonably discoverable at the time of trial but that would have caused a different result if presented at trial; "claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked”; or "has filed a prior petition and has requested DNA testing under this article” and "asserts new or different grounds for relief relat *1036 ed to DNA testing not previously presented or the availability of more advanced DNA technology.” Miss.Code Ann. § 99-39-23.

. In so ruling, we expressly overruled three cases finding that double-jeopardy claims were barred by the UPCCRA, and overruled Luckett v. State, 582 So.2d 428 (Miss.1991), insofar as it conflicted with our decision (i.e., we overruled Luclcett’s provision that errors affecting fundamental rights may — rather than must — be excepted from procedural bars). Rowland, 42 So.3d at 508 (overruling Luckett, 582 So.2d 428; Mann v. State, 490 So.2d 910 (Miss.1986); Jennings v. State, 700 So.2d 1326 (Miss.1997); and Pinkney v. State, 757 So.2d 297 (Miss.2000)).

. See The Declaration of Independence ¶ 2 (U.S.1776) (recognizing that "all men ... are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness”) (emphasis added).

. Two briefs were filed by Rowland: one pro se and another by Benjamin Súber (Indigent Appeals Division of the Office of the State Public Defender). In his pro se brief, Rowland raises three separate issues, as follows:
1. The lower court incorrectly held that Rowland could have been convicted of capital murder based on the alleged armed robbery of the other un-named and un-indicted victims, to circumvent the double jeopardy violation.
2. The lower court applied an erroneous legal standard to the double jeopardy analysis, shifting the Blockburger test to the greater offense from the lesser, denying a proper adjudication.
3.The trial court violated the prohibitions of the double jeopardy clause of the United States and Mississippi Constitutions by convicting Rowland of the capital murder and the underlying felony of armed robbery, effectively convicting and sentencing Rowland twice for the crime of armed robbery.
Finding that these issues combine to raise a single double-jeopardy claim, with which we agree, we find it unnecessary to address separately each discrete assignment of error.

. The State properly acknowledges that a court's analysis is of how the crimes were indicted, not the facts of how the crimes occurred. In its brief, the State recognizes that the question for this Court is whether "there [is] an element in the armed robbery indictment which is not in the capital murder indictment. The trial court did not answer this question.”

. We see no reason why the requirement of sufficient facts to enable a defendant to plead double jeopardy in the event of further prosecution (thus applying to the first two types of double jeopardy protection against a second *1039 prosecution for the same offense after acquittal or after conviction) should not equally apply to the third type of double jeopardy, protection against multiple punishments for the same offense. See Powell, 806 So.2d at 1074 (listing the three constitutional protections against double jeopardy).

. In Jordan v. State, 728 So.2d 1088 (Miss. 1998), we considered a defendant's conviction and sentencing for armed robbery and capital murder based on armed robbery, and found that "[s]ince armed robbery was the underlying felony in [the defendant’s] capital murder charges, it was improper to also convict [the defendant] of this same offense separately” and, thus, we "vacate[d] the conviction and sentence for the armed robbery count in order to avoid multiple punishments for the same offense.” Jordan, 728 So.2d at 1100.