KITCHENS, JUSTICE,
DISSENTING:
¶ 55. I respectfully dissent. An indictment that fails to provide sufficient notice of the specific crime charged violates the defendant’s constitutional due process rights. Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948). In Rowland v. State, 98 So.3d 1032 (Miss. 2012), this Court held that an indictment for capital murder that omits the name of the victim of the underlying crime (robbery in Rowland) “does not contain sufficient facts to fairly inform the defendant of the *37 charge against which he must defend and to enable him to plead double jeopardy” in the event of a later prosecution for the underlying crime. Id. at 1039. In stark contravention of Rowland, Carson’s capital murder indictment failed to name the victim of the underlying crime of robbery. Because the indictment was insufficient to provide Carson notice of the specific crime charged, his conviction must be reversed and rendered. Yet the majority affirms, overruling Rowland in the process. I disagree, because Roioland was correctly decided and safeguards the defendant’s state and federal constitutional rights to notice of the specific crime charged.
¶ 56. I also disagree with the majority’s holding that Carson’s counsel was not ineffective for failing to request an accomplice-testimony instruction. I would find that this omission constituted deficient performance that prejudiced Carson. Further, I would hold that the trial court erred by denying Carson’s proposed instruction D-6; without it, the jury was not instructed on the vital precept that the presumption of innocence attends the defendant throughout the trial.

I. Carson’s Indictment

¶ 57. The federal and state constitutions guarantee the right to notice of criminal charges. U.S. Const, amend. VI; Miss. Const, art. 3, § 26. The purpose of an indictment is to provide the defendant reasonable notice of the crime charged to enable him to prepare an adequate defense. Brawner v. State, 947 So.2d 254, 265 (Miss. 2006) (citing Brown v. State, 890 So.2d 901, 918 (Miss. 2004)). “No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.” Cole, 333 U.S. at 201, 68 S.Ct. 514
¶ 58. “An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense.” Gilmer v. State, 955 So.2d 829, 836-37 (Miss. 2007). This Court applies de novo review to a claim that the indictment was substantively insufficient, and such claim may be raised at any time. Id. at 836; Ross v. State, 954 So.2d 968, 1015 (Miss. 2007).
¶ 59. Carson was indicted in a multi-count indictment for capital murder with the underlying felony of robbery, possession of a firearm by a convicted felon, and conspiracy to commit armed robbery. Count I, the capital murder charge, stated:
ROBERT CARSON, a/k/a “BAY BAY”, on or about the 30th day of April, 2012, in the county aforesaid and within the jurisdiction of this Court, did, without authority of law and with or without any design to effect death, kill and murder Jose Gurrola Ortiz, a human being, while the said ROBERT CARSON, a/k/a “BAY BAY’ was then and there engaged in the commission of the crime of a[8] robbery, in violation of Miss. Code Ann. § 97-3-73 (1972, as amended), and in violation of Miss. Code Ann. § 97-3-19(2)(e) (1972, as amended)!)]
¶ 60. A reading of Count I shows that, although the charge identified the homicide victim as Jose Gurrola Ortiz, it did not *38 identify the victim of the robbery in which Carson was engaged when Ortiz was killed. In Rowland, this Court held that:
A capital-murder indictment that fails to identify the victim of the underlying crime ‘does not contain sufficient facts to fairly inform the defendant of the charge against which he must defend and enable him to plead double jeopardy in the event that he is separately punished or later prosecuted for the underlying felony; in other' words, the identity of the victim of the underlying felony is an element of the offense of capital murder that must be stated in the capital-murder indictment.
Rowland, 98 So.3d at 1039. Carson’s indictment runs afoul of this rule because it does not identify the victim of the underlying felony. Today the majority overrules Rowland, holding that a capital murder indictment need do no more than name the underlying felony.
¶ 61. This holding ignores the fact that, to pass constitutional muster, an indictment must do more than list the statutory elements of the charged crime. The, United States Supreme Court has held that “[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as ‘those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.’ ” Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). But the statutory description of the charged crime “must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.” /$. Further, the Supreme Court has stated that:
The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defencé, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so- that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, .not conclusions of law alone, A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances,
U.S. v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed, 588 (1875) (emphasis added).
¶ 62. The facts of Rowland illustrate the importance of the constitutional requirement that the indictment contain essential facts. Rowland was convicted of two counts of armed robbery and two counts of capital murder while engaged in the.commission of the same two robberies. Id. at 1033. Rowland’s charges arose from an incident in which three masked men armed with shotguns entered the Leflore County Country Club and robbed a gathering of eight poker players. Id. During the armed robbery, two of the poker players were slain. Id, Rowland was indicted for: (1) the capital murder of James Campbell while “in the commission of the crime of armed robbery of Pat Bolton and others,” and (2) the capital murder of Paul Hughes while “in the commission of the crime of armed robbery of O.B. Singleton and others.” Id. at 1033. He also was indicted in two separate counts for the armed robberies of Pat Bolton and O.B, Singleton. Id. at 1033-34. Rowland pled guilty to all four counts, and later he filed a motion for post-conviction relief arguing that he had been twice placed in jeopardy by the convictions of capital murder and armed robbery. Id. at 1034.
*39 ¶ 63. On review of Rowland’s double jeopardy claim, this Court held that Rowland’s right to be free of multiple punishments for the same crime had been violated by his convictions of two counts of capital murder with the underlying felony of armed robbery, and two counts of armed robbery of the same victims. The Court applied the test from Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), which provides that: “if each [criminal] statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.” This required the Court to determine whether the armed-robbery convictions “required proof of an additional element that the capital-murder convictions did not.” Rowland, 98 So.3d at 1038. The Court found that, if Rowland’s capital murder convictions could have been based on the language “and others” from the indictments, then each count of armed robbery included an element the capital murder convictions did not, namely, “the separate armed robberies of O.B. Singleton and Pat Bolton.” Id.
¶ 64. The Court rejected the proposition the capital murder convictions could have rested on the “and others” language. Id. at 1039. We held that a capital murder indictment based on the armed robbery of “others” did not identify the robbery victim and did not provide the defendant sufficient notice of the crimes charged and sufficient facts to enable him to plead double jeopardy. Id.[9] Quoting Burks v. State, 770 So.2d 960, 963 (Miss. 2000), the Court stated that “[w]e specifically have provided that ‘an indictment must state the name of the victim of an offense where that is an element of the offense, and a failure to state it, or a material variance between statement and proof is fatal, but an immaterial variance is not,’.” Rowland, 98 So.3d at 1039 (emphasis in original). The Court then held that a capital murder indictment must identify the victim of the underlying crime in order “to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy in the event that, he is separately punished or later prosecuted for the underlying felony.” Id. Because Rowland’s capital murder convictions could not have been based on his armed robbery of “others,” the. convictions had to have been based on his armed robbery of the persons named in the indictment, Bolton and Singleton. Id. And it was a double jeopardy violation for Rowland to have been convicted of the armed robberies of Bolton and Singleton and capital murder with the underlying crimes of armed robbery of Bolton and Singleton. Id.
¶ 65. The Court found that resolving Rowland’s, double jeopardy issue hinged on whether the name of the victim of the underlying felony is an. “element” that must be included, in. a capital murder indictment. Id. at 1038-39. In resolving that question, the Court recognized that Burks requires an indictment to include the name .of the victim of an offense when that is an essential element of the crime. Id. at 1039. Then, the Court held that “[a] capital-murder indictment that fails to identify the victim of the underlying crime does not contain sufficient facts to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy in the event he is separately punished or later prosecuted for the underlying felony .... ” Id. Thus, the *40 Court held that a capital murder indictment must identify the victim of the underlying felony to meet constitutional notice requirements. Id.
¶66. The majority overrules Rowland, concluding that in Rowland we improperly applied the Blockburger test and erroneously held that the victim’s name is an element of the crime of capital murder. In my view, any flaws in Rowland ⅛ analysis are of slight significance and fall far short of warranting the overruling of the Court’s carefully reasoned opinion. As explained above, three essential constitutional requirements exist for a valid indictment: the essential elements of the crime, sufficient facts to inform the defendant of the ñatee and cause of the accusation, and sufficient facts to protect the defendant from a second prosecution for the same crime. Gilmer, 955 So.2d at 836-37. Thus, a constitutionally valid indictment is one that contains both essential elements and essential facts. Id. The essential facts describe how the defendant’s conduct conformed to the statutory elements of the crime. And, for double jeopardy purposes, the facts alleged must be sufficient to distinguish the charged crime from other crimes. Goforth v. State, 70 So.3d 174, 189 (Miss. 2011). As the United States Supreme Court has recognized, an indictment that provides no more information than the statutory elements of the crime does not contain this vital distinguishing information. Cruikshank, 92 U.S. at 558.
¶ 67. In Rowland, this Court held that one necessary distinguishing fact in an indictment for capital murder with the underlying felony of armed robbery is the identity of the armed robbery victim. Rowland, 98 So.3d at 1039. The majority’s problem with Rowland is that the Court stated that the victim’s name was an “element” of the crime. Id. While I concede that the term “element” generally is understood as a component of the statutory definition of the crime, Rowland clearly held that the victim’s name is a fact that is essential to inform the defendant fairly of the crime charged and to enable him to plead double jeopardy in the event of a future prosecution. Id. Rowland held that “Rowland could not have been convicted on an indictment of capital-murder based on the ‘armed robbery of ... others’ ” because the word “others” did not identify the victim or victims of the armed robbery. Id.
¶ 68. And while the majority faults this Court in Rowland for examining the indictments to determine whether Rowland twice was placed in jeopardy for the same offense, I would find that the Court was eminently correct in examining the indictments to make this determination. The Fifth Amendment to the United States Constitution prohibits placing a person in jeopardy twice for the same offense. U.S. Const, amend. V. “[A]s expressed in a number of cases, to entitle the accused to plead former jeopardy, the offenses charged in the two prosecutions must be the same in law and in fact.” Burton v. State, 226 Miss. 31, 40, 79 So.2d 242, 246 (1955). Blockburger examined two potential double jeopardy violations: (1) multiple prosecutions under the same criminal statute, and (2) prosecution under different criminal statutes that the defendant argued really were the “same offense” under the Fifth Amendment. Blockburger, 284 U.S. at 301, 52 S.Ct. 180. Blockburger held that, in the second scenario, when the defendant claims that his prosecution under two different criminal statutes results in multiple punishment for the same offense, the court must compare the elements of the two statutorily defined crimes; if one crime has an additional element the other does not, the two crimes are not the same offense for double jeopardy purposes. Id. at 304, 52 S.Ct. 180. It is in this second *41 scenario that the statutory elements of the crime become the focus of the double jeopardy analysis. Id.
¶ 69. But in the first scenario, when the defendant claims that his prosecution under a specific statute and his later prosecution under the same statute involved the same offense, the only way to evaluate the claim is to examine the facts alleged in the indictments to determine whether the defendant was, or could be, prosecuted twice for the exact same crime. See Goforth, 70 So.3d at 189 (this Court held that five identically worded counts of sexual battery did not provide sufficient factual detail to protect the defendant’s double jeopardy rights); Burton, 226 Miss, at 44-45, 79 So.2d at 248-49 (examining the factual allegations in the indictments to determine whether the defendant twice had been put in jeopardy for the same offense). In this scenario, the statutory elements will be the same; so any attempt to distinguish the crimes must be undertaken by examining the facts alleged in the indictments, such as the date, time, location, and, as in Rowland, the victim’s name. Thus, in Rowland, to determine whether the defendant unconstitutionally had been punished twice for the same armed robbery, the Court compared Rowland’s indictments for armed robbery and for capital murder with the underlying felony of armed robbery. Because the indictments showed that Rowland had been “convicted of the indicted charges of capital-murder for killing during the commission of the armed robberies of O.B. Singleton and Pat Bolton, and then separately for the armed robberies of O.B. Singleton and Pat Bolton,” the Court held that he had been placed in double jeopardy. Rowland, 98 So.3d at 1039. While the Court may have been inexact when it labeled the victim’s identity an “element,” the Court clearly held that the victim’s name is an essential fact required to protect the defendant from being twice prosecuted for the same offense. No reason exists to overrule Rowland.
¶70. I find the majority’s reliance on Batiste v. State, 121 So.3d 808 (Miss. 2013), and Goff v. State, 14 So.3d 625 (Miss. 2009), to be misplaced. Both cases held that an indictment for capital murder with the underlying felony of robbery need not list the items taken in the robbery. Batiste, 121 So.3d at 836; Goff, 14 So.3d at 665. Neither Batiste nor Goff addressed a capital murder indictment’s failure to identify the victim of the underlying crime, and Batiste simply relied on Gojff without citing the later-decided Rowland, indicating that the Court simply failed to consider it.
¶ 71. Because Carson’s indictment did not name the victim of the underlying felony of robbery, his indictment was fatally defective.[10] It did not contain sufficient facts to inform Carson fairly of the nature of the charge and to enable him to plead *42 double jeopardy in the event of a later prosecution for the underlying crime. Rowland plainly held that a capital murder indictment must identify the victim of the underlying crime “to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy in the event that he is separately punished or later prosecuted for the underlying felony.” Rowland, 98 So.3d at 1039. I find Rowland’s reasoning to be sound and would not overrule it. Because Carson’s indictment failed to identify the victim of the underlying felony, his indictment was fatally defective and violated his federal and state constitutional rights to notice of the charge against him. Therefore, I would reverse Carson’s conviction and dismiss the indictment.

II. Ineffective Assistance of Counsel

¶72. A defendant claiming ineffective assistance of counsel must show that counsel rendered deficient performance, and that the deficiency prejudiced the defense. Pauley v. State, 113 So.3d 557, 562 (Miss. 2013) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A defendant is entitled to a cautionary jury instruction when an accomplice’s testimony is uncorroborated. Williams v. State, 32 So.3d 486, 491 (Miss. 2010). This Court has defined “accomplice” as: “a person who is implicated in the commission of a crime.” Brewer v. State, 725 So.2d 106, 124 (Miss. 1998). Without question, Clay was an accomplice to the crime under Mississippi law. Furthermore, Clay’s testimony was uncorroborated and it provided the sole basis for the State’s convictions against Carson. No witness other than Clay testified that he or she knew Carson was at the Ridgeland Ranch apartment complex on the night of the crimes. Clay provided the only proof adduced at trial, through his eyewitness testimony, that Carson shot Ortiz. Thus, if Carson’s trial attorney had requested a cautionary instruction, the trial court would have been obligated to grant that request. Carson’s attorney therefore failed to act reasonably in not requesting a cautionary instruction regarding Clay’s testimony as an accomplice and, accordingly, was ineffective for the purpose of the first prong of the Strickland test. Strickland, 466 U.S. at 688, 104 S.Ct. 2052.
¶ 73. Contrary to the majority’s holding, Carson showed that counsel’s insufficiency had a reasonable probability of affecting the outcome of the case. Strickland, 466 U.S. at 695,104 S.Ct. 2052. The entirety of the evidence connecting Cai-son to the crimes was provided by Clay, an accomplice who had recanted his statement to police before the trial. The State offered no other witnesses who corroborated Clay’s version of events or who had firsthand knowledge of the crime. The State offered no forensic evidence. The majority finds that Carson was not prejudiced because Bryant testified that Carson had admitted his participation in the robbery. But Bryant had no firsthand knowledge of the crime. In fact, Bryant testified that she had asked Carson directly whether he had shot Ortiz, and he had said “no.” The only evidence that Carson shot Ortiz came from Clay. Bryant’s testimony did not reduce the prejudice to Carson of counsel’s having failed to request a cautionary instruction on Clay’s accomplice testimony.
¶ 74. In its finding that Carson failed to show prejudice, the majority also relies on the facts that Clay testified about his involvement in the crime, and that the jury could have inferred that Clay’s plea deal gave him an incentive to lie. The majority’s reasoning seems to be that these aspects of Clay’s testimony rendered the instructional failure harmless, because a reasonable juror automatically would have viewed his testimony with skepticism. But the ma- *43 Jonty’s speculative assessment of Clay’s testimony does nothing to reduce its prejudice to Carson. Virtually all accomplice testimony includes a description of the witness’s own criminal activity and “deal” with the State, and these aspects of accomplice testimony support rather than diminish the need for a cautionary instruction. An instruction from the judge informing the jury that “the uncorroborated testimony of an accomplice should be viewed with great caution and suspicion and that it must be reasonable and not improbable or self-contradictory or substantially impeached,” see Hussey v. State, 473 So.2d 478, 480 (Miss. 1985), would have had a “reasonable probability” of affecting the outcome of the case. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. The record on direct appeal supports an ineffective assistance of counsel claim that warrants reversal of Carson’s conviction and sentence and remand of this case for a new trial. However, due to the insufficiency of Carson’s indictment, I would hold that Carson’s conviction must be reversed and the indictment dismissed.

III. Jury Instruction D-6

¶ 75. I also disagree with the majority’s finding that Carson was not entitled to jury instruction D-6. Without instruction D-6, the jury was not informed that “The presumption of innocence attends the defendant through the trial and prevails at the close of trial unless overcome by evidence that satisfies the jury of the defendant’s guilty [sic] beyond a reasonable doubt.” The language requested by Carson is a correct statement of the law. Jones v. State, 920 So.2d 465, 471 (Miss. 2006) (“[B]ecause the law presumes every person charged with a criminal offense is innocent, the prosecution carries the burden of proving all elements of the charged offenses beyond a reasonable doubt. It follows that this presumption of innocence attends the defendant throughout the trial and prevails at its close unless and until this presumption is overcome by evidence which satisfies the jury of the defendant’s guilt beyond a reasonable doubt.”). Moreover, this concept is not fairly covered in the other instructions approved by the trial court. As such, the trial court erred by not giving the jury an instruction containing this language.
¶ 76. This Court “will set aside a jury’s verdict if the jury was improperly instructed, misled, confused, or ignores the weight of the evidence.” Jackson v. Daley, 739 So.2d 1031, 1039 (Miss. 1999) (citing McKinzie v. Coon, 656 So.2d 134, 142 (Miss. 1995)) (emphasis added). “A new trial may be granted in a number of circumstances, such as when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice.” Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara, 908 So.2d 716, 726-27 (Miss. 2005) (quoting Shields v. Easterling, 676 So.2d 293, 298 (Miss. 1996)). In this case, evidence supporting the jury’s verdict is scant. The entirety of the prosecution’s case relied upon the sometimes-recanted testimony of Carson’s alleged accomplice, Clay. Thus, it is impossible for this Court to know the impact that this instruction would have had on the jury’s consideration.

IV. Conclusion

¶ 77. Because Carson’s capital murder indictment did not identify the victim of the underlying felony of robbery, the indictment failed to provide Carson constitutionally sufficient notice of the crime charged and failed to provide him sufficient facts to enable a future double jeopardy plea. This Court squarely held in *44 Rowland that a capital murder indictment that does not identify the victim of the underlying felony of robbery does not effectively charge capital murder. Therefore, Carson’s conviction must be reversed and rendered. I also would find that Carson was prejudiced by his counsel’s deficient failure to request an accomplice testimony instruction. Finally, I would hold that the trial court erred by denying Carson’s proposed jury instruction that the presumption of innocence attends the defendant throughout the trial.
KING, J., JOINS THIS OPINION.

. The use of the definite article "a” suggests that the indictment refers to a specific robbery, although its victim is not identified.

. This holding implicitly recognized that robbery is a crime against persons, not just a property crime. Thus, the person against whom the crime is committed must be identified, similar to the way one would identify the victim of a murder or aggravated assault.

. The fact that Carson’s indictment identifies the victim of the underlying crime by naming the homicide victim does not aid the State. The victim of the underlying crime in a capital murder case is not always the person who was killed. For example, in Rowland, Rowland was convicted of the capital murder of James Campbell while in the commission of the armed robbery of a different person, Pat Bolton. Rowland, 98 So.3d at 1033. He also was convicted of the capital murder of Paul Hughes while in the commission of the armed robbery of O.B. Singleton. Id. It would be a logical fallacy to assume that identifying the homicide victim also identifies the victim of the underlying crime.
And Carson plainly raised the issue of notice in both his pro se supplemental brief and the supplemental brief filed by his counsel pursuant to an order of this Court. Carson argued that, because the identity of the victim of the underlying felony was omitted from the indictment, "the capital murder indictment in this case failed to allege an essential element necessary to put him on notice of the charges against him .... ”